1  Lincoln D. Bandlow, Esq. (CA #170449)
   Lincoln@BandlowLaw.com
2  **Law Offices of Lincoln Bandlow, PC**
   1801 Century Park East, Suite 2400
3  Los Angeles, CA  90067
   Phone: (310) 556-9680
4  Fax: (310) 861-5550

5  Attorney for Plaintiff
   Strike 3 Holdings, LLC

6

7

8                **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11  STRIKE 3 HOLDINGS, LLC,                    Case Number:

12               Plaintiff,                    **COMPLAINT FOR COPYRIGHT INFRINGEMENT - DEMAND FOR JURY TRIAL**

13  vs.

14  JOHN DOE subscriber assigned IP
    address 75.82.119.95,
15
                 Defendant.
16

17

18       Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), brings this

19  complaint against Defendant, John Doe subscriber assigned IP address

20  75.82.119.95 ("Defendant"), and alleges as follows:

21                          **Introduction**

22       1.    This is a case about the ongoing and wholesale copyright

23  infringement of Plaintiff's motion pictures by Defendant, currently known only by

24  an IP address.

25       2.    Plaintiff is the owner of award-winning, critically acclaimed adult

26  motion pictures.

27       3.    Strike 3's motion pictures are distributed through the *Blacked*, *Tushy*,

28  *Vixen*, *Tushy Raw*, *Blacked Raw*, *MILFY*, and *Slayed* adult websites and DVDs.

1

With millions of unique visitors to its websites each month, the brands are famous for redefining adult content, creating high-end, artistic, and performer-inspiring motion pictures produced with a Hollywood style budget and quality.

4.    Defendant is, in a word, stealing these works on a grand scale.  Using the BitTorrent protocol, Defendant is committing rampant and wholesale copyright infringement by downloading Strike 3's motion pictures as well as distributing them to others.  Defendant did not infringe just one or two of Strike 3's motion pictures, but has been recorded infringing 36 movies over an extended period of time.

5.    Although Defendant attempted to hide this theft by infringing Plaintiff's content anonymously, Defendant's Internet Service Provider ("ISP"), Spectrum, can identify Defendant through his or her IP address 75.82.119.95.

6.    This is a civil action seeking damages under the United States Copyright Act of 1976, *as amended*, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

### Jurisdiction and Venue

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (jurisdiction over copyright actions).

8.    This Court has personal jurisdiction over Defendant because Defendant used an Internet Protocol address ("IP address") traced to a physical address located within this District to commit copyright infringement.  Therefore: (i) Defendant committed the tortious conduct alleged in this Complaint in this State; (ii) Defendant resides in this State and/or; (iii) Defendant has engaged in substantial – and not isolated – business activity in this State.

9.    Plaintiff used IP address geolocation technology by Maxmind Inc. ("Maxmind"), an industry-leading provider of IP address intelligence and online fraud detection tools, to determine that Defendant's IP address traced to a physical

1    address in this District.  Over 5,000 companies, along with United States federal

2    and state law enforcement, use Maxmind's GeoIP data to locate Internet visitors,

3    perform analytics, enforce digital rights, and efficiently route Internet traffic.

4        10.    Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this

5    district because: (i) a substantial part of the events or omissions giving rise to the

6    claims occurred in this District; and, (ii) the Defendant resides (and therefore can

7    be found) in this District and resides in this State.  Additionally, venue is proper in

8    this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because

9    Defendant or Defendant's agent resides or may be found in this District.

10                              **Parties**

11        11.    Plaintiff, Strike 3 is a Delaware limited liability company located at

12    2140 S. Dupont Hwy, Camden, DE.

13        12.    Plaintiff currently can only identify Defendant by his or her IP

14    address.  Defendant's IP address is 75.82.119.95.  Defendant's name and address

15    can be provided by Defendant's Internet Service Provider.

16                         **Factual Background**

17                    ***Plaintiff's Award-Winning Copyrights***

18        13.    Strike 3's subscription-based websites proudly boast a paid

19    subscriber base that is one of the highest of any adult-content sites in the world.

20    Strike 3 also licenses its motion pictures to popular broadcasters and Strike 3's

21    motion pictures are some of the highest selling adult DVDs in the United States.

22        14.    Strike 3's motion pictures and websites have won numerous awards,

23    such as "best cinematography," "best new studio," and "adult site of the year."

24        15.    Strike 3's motion pictures have had positive global impact, leading

25    more adult studios to invest in better content, higher pay for performers, and to

26    treat each performer with respect and like an artist.

27        16.    Unfortunately, Strike 3, like a large number of other makers of

28    motion picture and television works, has a major problem with Internet piracy.

1  Often appearing among the most infringed popular entertainment content on

2  torrent websites, Strike 3's motion pictures are among the most pirated content in

3  the world.

4  ***Defendant Used the BitTorrent File Distribution Network***

5  ***to Infringe Plaintiff's Copyrights***

6       17.     BitTorrent is a system designed to quickly distribute large files over

7  the Internet. Instead of downloading a file, such as a movie, from a single source,

8  BitTorrent users are able to connect to the computers of other BitTorrent users in

9  order to simultaneously download and upload pieces of the file from and to other

10  users.

11       18.     BitTorrent's popularity stems from the ability of users to directly

12  interact with each other to distribute a large file without creating a heavy load on

13  any individual source computer and/or network.  It enables Plaintiff's motion

14  pictures, which are often filmed in state of the art 4kHD, to be transferred quickly

15  and efficiently.

16       19.     To share a movie within the BitTorrent network, a user first uses

17  BitTorrent software to create a .torrent file from the original digital media file.

18  This process breaks the original digital media file down into numerous pieces.

19       20.     The entire movie file being shared has a hash value (*i.e.*, the "File

20  Hash").  A hash value is an alpha-numeric value of a fixed length that uniquely

21  identifies data.

22       21.     Hash values are not arbitrarily assigned to data merely for

23  identification purposes, but rather are the product of a cryptographic algorithm

24  applied to the data itself.  As such, while two identical sets of data will produce

25  the same cryptographic hash value, any change to the underlying data – no matter

26  how small – will change the cryptographic hash value that correlates to it.

27       22.     To find and re-assemble the pieces of the digital media file, *i.e.*, to

28  download the file using BitTorrent, a user must obtain the .torrent file for the

1   specific file that has been broken down into pieces.

2        23.    Each .torrent file contains important metadata with respect to the

3   pieces of the file. When this data is put into the cryptographic algorithm, it results

4   in a hash value called the "Info Hash."

5        24.    The "Info Hash" is the data that the BitTorrent protocol uses to

6   identify and locate the other pieces of the desired file (in this case, the desired file

7   is the respective file for the infringing motion pictures that are the subject of this

8   action) across the BitTorrent network.

9        25.    Using the Info Hash in the metadata of a .torrent file, a user may

10  collect all the pieces of the digital media file that correlates with the specific

11  .torrent file.

12       26.    Once a user downloads all of the pieces of that digital media file from

13  other BitTorrent users, the digital media file is automatically reassembled into its

14  original form, ready for playing.

15       27.    Plaintiff has developed, owns, and operates infringement detection

16  systems named "VXN Scan" and the "Cross Reference Tool".  Each infringement

17  detection system identifies infringement in two distinct ways.

18       28.    The Cross Reference Tool first searched for and obtained .torrent

19  files claiming to be infringing copies of Plaintiff's works, and then VXN Scan

20  downloaded complete copies of the digital media files that correlate to those

21  .torrent files.

22       29.    Plaintiff then compared the completed digital media files to

23  Plaintiff's copyrighted works to determine whether they are infringing copies of

24  one of Plaintiff's copyrighted works.

25       30.    The digital media files have been verified to contain a digital copy of

26  a motion picture that is identical (or, alternatively, strikingly similar or

27  substantially similar) to Plaintiff's corresponding original copyrighted Works.

28       31.    VXN Scan used the "Info Hash" value, contained within the metadata

5

1  of the .torrent file which correlated with a digital media file that was determined

2  to be identical (or substantially similar) to a copyrighted work, to download a

3  piece (or pieces) of multiple digital media files from Defendant using the

4  BitTorrent network.

5      32.    VXN Scan only downloads pieces of digital media files from

6  Plaintiff's copyrighted works. At no point did VXN Scan upload content to any

7  BitTorrent user.  Indeed, it is incapable of doing so.

8      33.    While Defendant was using the BitTorrent file distribution network,

9  VXN Scan established multiple direct TCP/IP connections with Defendant's IP

10 address.

11     34.    Plaintiff identified these pieces as portions of infringing copies of

12 Strike 3's motion pictures.

13     35.    VXN Scan detected, captured and documented Defendant

14 transmitting pieces of Plaintiff's copyrighted motion pictures and recorded those

15 transactions in a Packet Capture ("PCAP") file.

16     36.    Plaintiff also recorded infringement using its Cross Reference Tool.

17     37.    The Cross Reference Tool is designed on the basis of a distributed

18 hash table ("DHT") and is a class of decentralized distributed systems that

19 provides an identification service similar to a hash table: (key, value) pairs are

20 stored in a DHT, and any participating node can efficiently retrieve the value

21 associated with a given key.

22     38.    BitTorrent clients use a DHT to locate peers who are participating in

23 the distribution of the digital media files related to the Info Hash. Specifically, a

24 BitTorrent client locates and connects to the DHT network. That way it registers

25 its own IP address while requesting IP addresses of other peers, which are

26 distributing the same .torrent file.

27     39.    Using this process BitTorrent users are able to locate and connect to a

28 number of peers within a particular swarm, and download the data related to each

1 | .torrent file.

2 |     40.    A BitTorrent client registers the IP address of the user into the DHT
3 | with the purpose of participating in the distribution of constituent pieces of the
4 | relevant digital media file.

5 |     41.    The Cross Reference Tool uses servers that locate .torrent files and
6 | their related Info Hashes. The servers subsequently download the torrent
7 | information from popular torrent websites.  The Cross Reference Tool is incapable
8 | of downloading any digital media file associated with an Info Hash, and it has
9 | only the ability to download torrent file metadata.

10 |     42.    Similar to BitTorrent clients, the Cross Reference Tool uses a DHT
11 | to obtain the IP Addresses of peers registered to each .torrent file listed in the
12 | DHT.

13 |     43.    The Cross Reference Tool detected and documented that Defendant
14 | used the BitTorrent File Distribution Network with the purpose of distributing
15 | digital media files that have been determined to be identical (or substantially
16 | similar) to Plaintiff's copyrighted motion pictures. At no point did the Cross
17 | Reference Tool upload content to any BitTorrent user.  Indeed, it is incapable of
18 | doing so.

19 |     44.    Both VXN Scan and the Cross Reference Tool independently
20 | recorded multiple infringements in the manner described above.  Collectively,
21 | Plaintiff's proprietary software detected 36 number of infringements.

22 |     45.    Each work infringed by Defendant is listed on Exhibit A and sets
23 | forth the Universal Time Coordinated (UTC) time and date of each infringement,
24 | along with the Info Hash value obtained from the metadata of the corresponding
25 | .torrent file.

26 |     46.    Exhibit A also sets forth relevant copyright information for each
27 | work at issue:  the date of publication, the date of registration, and the work's
28 | copyright registration number.   In a showing of good faith, Plaintiff has

Complaint – Demand for Jury Trial

1  intentionally omitted the title of the work from this public filing due to the adult

2  nature of its content, but can provide a version of Exhibit A containing the works'

3  titles to the Court or any party upon request.

4       47.    Thus, Defendant downloaded, copied, and distributed Plaintiff's

5  Works without authorization.

6       48.    Defendant's infringement was continuous and ongoing.

7       49.    Plaintiff owns the copyrights to the Works and the Works have been

8  registered with the United States Copyright Office.

9       50.    Plaintiff seeks statutory damages, attorneys' fees, and costs under

10 17 U.S.C. § 501 of the United States Copyright Act.

11 **COUNT I**

12 **Direct Copyright Infringement**

13      51.    The allegations contained in paragraphs 1-50 are hereby re-alleged as

14 if fully set forth herein.

15      52.    Plaintiff is the owner of the Works, which is an original work of

16 authorship.

17      53.    Defendant copied and distributed the constituent elements of

18 Plaintiff's Works using the BitTorrent protocol.

19      54.    At no point in time did Plaintiff authorize, permit or consent to

20 Defendant's distribution of its Works, expressly or otherwise.

21      55.    As a result of the foregoing, Defendant violated Plaintiff's exclusive

22 right to:

23      (A)    Reproduce its Works in copies, in violation of 17 U.S.C. §§ 106(1)

24 and 501;

25      (B)    Distribute copies of the Works to the public by sale or other transfer

26 of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3)

27 and 501;

28      (C)    Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4)

8

1    and 501, by showing the Works' images in any sequence and/or by making the

2    sounds accompanying the Works' audible and transmitting said performance of

3    the work, by means of a device or process, to members of the public capable of

4    receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform"

5    and "publicly" perform); and

6         (D)    Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5)

7    and 501, by showing individual images of the works non-sequentially and

8    transmitting said display of the works by means of a device or process to members

9    of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's

10   definition of "publicly" display).

11        56.    Defendant's infringements were committed "willfully" within the

12   meaning of 17 U.S.C. § 504(c)(2).

13        WHEREFORE, Plaintiff respectfully requests that the Court:

14        (A)    Permanently enjoin Defendant from continuing to infringe Plaintiff's

15   copyrighted Works;

16        (B)    Order that Defendant delete and permanently remove the digital

17   media files relating to Plaintiff's Works from each of the computers under

18   Defendant's possession, custody or control;

19        (C)    Order that Defendant delete and permanently remove the infringing

20   copies of the Works Defendant has on computers under Defendant's possession,

21   custody or control;

22        (D)    Award Plaintiff statutory damages per infringed work pursuant to

23   17 U.S.C. § 504(a) and (c);

24        (E)    Award Plaintiff its reasonable attorneys' fees and costs pursuant to

25   17 U.S.C. § 505; and

26        (F)    Grant Plaintiff any other and further relief this Court deems just and

27   proper.

28

Complaint – Demand for Jury Trial

1    DATED this 4th day of April, 2025.

2                                      **Law Offices of Lincoln Bandlow, PC**

3                                      *s/ Lincoln D. Bandlow*
                                       Lincoln D. Bandlow
4                                      Attorney for Plaintiff
                                       Strike3 Holdings, LLC
5

6
                        **DEMAND FOR A JURY TRIAL**
7
        Plaintiff hereby demands a trial by jury on all issues so triable.
8
        DATED this 4th day of April, 2025.
9
                                       **Law Offices of Lincoln Bandlow, PC**
10
                                       *s/ Lincoln D. Bandlow*
11                                     Lincoln D. Bandlow
                                       Attorney for Plaintiff
12                                     Strike3 Holdings, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28